# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ELIZABETH BELL PARTON,** | ) | |
| Plaintiff | ) | Civil Action No. 2:21cv00019 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | | |

### I. Background and Standard of Review

Plaintiff, Elizabeth Bell Parton, ("Parton"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Parton protectively filed her application for DIB[2] on November 5, 2018, alleging disability as of March 15, 2016, based on degenerative disc disease; rheumatoid arthritis; neuropathy in the left lower leg; high blood pressure; osteoarthritis; tumors on the left knee; and right knee pain. (Record, ("R."), at 15, 163-64, 197, 253.) The claim was denied initially and upon reconsideration. (R. at 93-95, 100-07.) Parton then requested a hearing before an administrative law judge, ("ALJ"). (R. at 108-09.) The ALJ held a hearing on September 11, 2020, at which Parton was represented by counsel. (R. at 31-60.)

By decision dated September 30, 2020, the ALJ denied Parton's claim. (R. at 15-24.) The ALJ found Parton met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2021. (R. at 17.) The ALJ found Parton had not engaged in substantial gainful activity since March 15, 2016,[3] the alleged onset date. (R. at 17.) The ALJ determined Parton had severe impairments, namely, degenerative disc disease of the cervical and lumbar spine; arthritis and degenerative joint disease of the right shoulder with surgical repair; fibromyalgia; osteoarthritis of the bilateral knees; rheumatoid arthritis; neuropathy of the left leg; and a history of great toe fusion, but he found Parton did not have an impairment or

---

[2] Parton also filed an application for supplemental security income, ("SSI"), but the application was denied because Parton's resources exceeded the eligible limit. (R. at 85-89, 157-60.)

[3] Therefore, Parton must show she was disabled between March 15, 2016, the alleged onset date, and September 30, 2020, the date of the ALJ's decision, to be eligible for benefits.

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ found Parton had the residual functional capacity to perform light work,[4] except she could occasionally push, pull and perform overhead reaching with the right arm; she could occasionally perform postural activities; she could never climb ladders, ropes or scaffolds; and she could have no more than occasional exposure to temperature extremes, vibrations and hazards. (R. at 19.) The ALJ found Parton was unable to perform any of her past work. (R. at 22.) Based on Parton's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Parton could perform, including the job of a school nurse and a companion. (R. at 22-23.) Thus, the ALJ concluded Parton was not under a disability as defined by the Act from March 15, 2016, through the date of the decision, and she was not eligible for DIB benefits. (R. at 24.) *See* 20 C.F.R. § 404.1520(g) (2021).

After the ALJ issued his decision, Parton pursued her administrative appeals, (R. at 148-50), but the Appeals Council denied her request for review. (R. at 1-5.) Parton then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2021). This case is before this court on Parton's motion for summary judgment filed August 10, 2021, and the Commissioner's motion for summary judgment filed September 7, 2021.

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2021).

*II. Facts and Analysis*

Parton was born in 1959, (R. at 22, 163), which, on the alleged onset disability date, classified her as a "person of advanced age" under 20 C.F.R. § 404.1563(e), and on the date of the ALJ's decision, classified her as a "person closely approaching retirement age" under 20 C.F.R. § 404.1563(e). Parton has a college education and past work experience as a registered nurse[5] and a parts clerk. (R. at 37, 53-54, 198.)

Rick Bradley, a vocational expert, was also present and testified at Parton's hearing. (R. at 39-40, 53-58.) Bradley classified Parton's past work as a registered nurse[6] at the medium[7] exertion level with a specific vocational preparation, ("SVP"), of 7. (R. at 39.) He stated Parton's work as a registered nurse had skills that transferred to light or sedentary[8] work. (R. at 39.) Therefore, Bradley identified the jobs as a school nurse and a companion, both of which were classified as light work. (R. at 39.) He stated that should an individual be limited to occasional reaching, handling and fingering, the identified jobs would be eliminated. (R. at 56.)

---

[5] Parton also has past work experience as a dialysis technician, but the ALJ found this job was performed outside the 15-year timeframe and did not consider it as past relevant work. (R. at 38-39.)

[6] Bradley stated that the job as a registered nurse was listed in the Dictionary of Occupational Titles, ("DOT"), as a nurse, general duty found at DOT 075.364-010. (R. at 39.)

[7] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2021).

[8] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2021).

Since the following analysis is centered on Parton's ability to reach overhead, the court will address only the facts relevant to her bilateral shoulder complaints. The record shows that, in December 2015, Parton complained of bilateral shoulder problems and examination of her shoulders revealed latency to active elevation of the arms overhead and she was diagnosed with arthritis. (R. at 350-51.)

On August 15, 2016, x-rays of Parton's shoulders showed mild bilateral acromioclavicular, ("AC"), joint osteoarthritis. (R. at 987.) On December 12, 2016, Parton complained of right shoulder and hand pain, lower back and right hip pain. (R. at 372.) Upon physical examination Parton was found to have positive right rotator cuff impingement. (R. at 374.)

On October 16, 2017, Parton complained of bilateral shoulder pain, which was exacerbated by overhead elevation. (R. at 467-68.) Parton was diagnosed with bilateral bursitis of the shoulders and a steroid injection was given. (R. at 469-70.) On July 9, 2018, Parton again complained of right shoulder pain exacerbated with moving her right arm. (R. at 458.) Parton received a steroid injection in the right shoulder. (R. at 460.) On August 8, 2018, Parton continued to report right shoulder pain and stated her recent injection provided partial pain relief. (R. at 453.) On December 10, 2018, x-rays of Parton's right shoulder showed AC joint arthritis. (R. at 669.)

On January 23, 2019, an MRI of Parton's right shoulder showed large full-thickness tear through the anterior fibers of the supraspinatus tendon; mild fatty atrophy of the supraspinatus muscle; fluid in the subacromial/subdeltoid bursa compatible with bursitis; and mild AC joint osteoarthritis. (R. at 669-70.) Parton was diagnosed with complete rotator cuff tear of the right shoulder, bursitis of the right shoulder and osteoarthritis of the right shoulder. (R. at 670.)

On March 15, 2019, Dr. Bert Spetzler, M.D., a state agency physician, completed a medical assessment, finding Parton could perform light work. (R. at 66-68.) He found Parton could stand, walk and sit six hours each in an eight-hour workday; frequently push/pull and reach overhead with the right upper extremity; occasionally climb ramps and stairs, balance; stoop, kneel, crouch and crawl; and never climb ladders, ropes and scaffolds. (R. at 66.) Dr. Spetzler found Parton had no visual or communicative limitations. (R. at 67.) He found Parton should avoid concentrated exposure to temperature extremes, vibration and hazards, such as machinery and heights. (R. at 67-68.) In making this determination, Dr. Spetzler noted that Parton had degenerative joint disease to the right shoulder with multilevel degenerative disc disease in the cervical and lumbar spine. (R. at 68.) He also noted that Parton had thinning of the rotator cuff but full range of motion. (R. at 68.)

Parton's right shoulder pain was treated with injections and physical therapy, which provided short-term relief (R. at 785.) On October 29, 2019, Parton reported worsened right shoulder pain and stated it was interfering with her activities of daily living, and surgery was recommended. (R. at 785-86.) On November 11, 2019, Parton underwent rotator cuff repair surgery, which significantly improved her pain and range of motion. (R. at 736-42, 806, 810.)

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds

conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Parton argues that substantial evidence does not support the ALJ's finding that she was not disabled. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 13-14.) Parton argues the ALJ failed to properly evaluate her transferrable skills in finding she could perform the jobs as a school nurse and a companion. (Plaintiff's Brief at 14-16.) Parton further argues the ALJ

failed to properly analyze the evidence related to her musculoskeletal impairments.
(Plaintiff's Brief at 17-19.)

Parton filed her application in November 2018; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions here.[9] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. § 404.1520c(a) (2021). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. § 404.1520c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1) (2021).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(1) (2021). "Consistency" denotes "the

---

[9] 20 C.F.R. § 404.920c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2) (2021). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[10] *See* 20 C.F.R. § 404.1520c(b)(2).

Parton argues that substantial evidence does not support the ALJ's finding that she was not disabled. (Plaintiff's Brief at 13-14.) Based on my review of the record, I agree. A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. § 404.1545(a) (2021). The ALJ found Parton had the residual functional capacity to perform light work, except she could occasionally push, pull and perform overhead reaching with the right arm; she could occasionally perform postural activities; she could never climb ladders, ropes or scaffolds; and she could have no more than occasional exposure to temperature extremes, vibrations and hazards. (R. at 19.)

In making this residual functional capacity finding, the ALJ stated he found Dr. Spetzler's March 2019 opinion persuasive and stated it was well-supported with citations to the record.[11] (R. at 22.) In addition, the ALJ found Dr. Spetzler's opinion was consistent with the overall record. (R. at 22.) Dr. Spetzler found that Parton

---

[10] An exception to this is when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(3) (2021).

[11] While the ALJ noted Parton's complaints and objective medical evidence in his opinion, other than Dr. Spetzler's opinion, he failed to explain what other evidence he found persuasive and consistent.

could perform light work, except she could stand, walk and sit six hours each in an eight-hour workday; frequently push/pull and reach overhead with the right upper extremity; occasionally climb ramps and stairs, balance; stoop, kneel, crouch and crawl; and never climb ladders, ropes and scaffolds. (R. at 66.) In making this determination, Dr. Spetzler noted that Parton had degenerative joint disease to the right shoulder with multilevel degenerative disc disease in the cervical and lumbar spine. (R. at 68.) He also noted that Parton had thinning of the rotator cuff but full range of motion. (R. at 68.) The ALJ noted that these "findings clearly demonstrate [Parton's] residual functioning is fully accommodated through a restriction to a range of light work." (R. at 22.) Yet, the ALJ found Parton had the residual functional capacity to perform light work, except she could *occasionally* push, pull and perform overhead reaching with the right arm. (R. at 19.) Dr. Spetzler found Parton could only *frequently* push/pull and reach overhead with the right upper extremity.

Furthermore, the vocational expert was asked to identify jobs that a hypothetical individual of Parton's age, education and work history, who was limited to light work except she could only push, pull and reach overhead *occasionally*. (R. at 55.) He identified the jobs of a school nurse and a companion. (R. at 54-55.) When asked if the jobs of school nurse and companion required *frequent* reaching, handling and fingering, Bradley stated that these were requirements for both jobs. (R. at 56.) Bradley further stated that, should an individual be limited to *occasional* reaching, handling and fingering, these jobs would be eliminated. (R. at 56.) This is in contradiction to his earlier testimony when he stated that a hypothetical individual who was limited to pushing, pulling and reaching overhead occasionally could perform the job of a school nurse and a companion. Based on this, I do not find that substantial evidence exists to support the ALJ's residual functional capacity finding or his finding that a significant number of jobs exist that Parton could perform.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's finding that other jobs existed that Parton could perform; and

2. Substantial evidence does not exist in the record to support the Commissioner's finding that Parton was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Parton's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Parton's claim to the Commissioner for further development.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also

receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     September 2, 2022.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE